■ In the Matter of 126 FRONT STREET REALTY Co., Respondent, v NEW YORK CITY LOFT BOARD et al., Appellants.—In a proceeding pursuant to CPLR article 78 to review a determination of the New York City Loft Board (hereinafter the Loft Board), dated November 19, 1984, which granted a tenant's application for the downward adjustment of the rent of a residential loft in an interim multiple dwelling owned by the petitioner, the Loft Board and the City of New York appeal from a judgment of the Supreme Court, Kings County (Lodato, J.), dated August 28, 1985, which annulled the Loft Board's determination and directed the Board to issue annual rent guidelines applicable to interim multiple dwellings as defined by Multiple Dwelling Law § 281.

Ordered that the judgment is reversed, on the law, with costs, the determination is confirmed and the proceeding is dismissed on the merits.

The petitioner 126 Front Street Realty Co. is the owner of a Brooklyn loft building registered as an "interim multiple

dwelling" pursuant to Multiple Dwelling Law article 7-C, commonly known as the Loft Law (L 1982, ch 349). Though otherwise subject to the law's provisions, because the petitioner's building was, upon the June 21, 1982 effective date of the statute, located "within an area designated by the local zoning resolution as a study area for possible rezoning to permit residential use" (Multiple Dwelling Law § 281 [2] [iii]), the premises were exempt from the Loft Law's timetable for coming into compliance with prescribed safety and fire protection standards until such time as the necessary rezoning occurred (Multiple Dwelling Law § 281 [2]). The law also provides with respect to such premises that should the city's ultimate decision be to not rezone the "designated study area" to permit residential use, the loft buildings located therein become exempt from the statute entirely (Multiple Dwelling Law § 281 [2]).

During the time that the city's decision on rezoning was pending, a dispute arose between the petitioner and a residential tenant of the building over the amount of rent that the petitioner was entitled to charge following the expiration in February 1983 of the tenant's lease. Convinced that he was being overcharged, the tenant in February 1984 filed an application for a rent adjustment with the Loft Board, the special unit created by the Loft Law for the purpose, *inter alia,* of resolving controversies involving owners and tenants of interim multiple dwellings *(see,* Multiple Dwelling Law § 282). The Loft Board's determination, rendered in November 1984, found that the rent increase imposed by the petitioner had been in excess of the Loft Board's rent guidelines. These guidelines had been established by the Loft Board in December 1982 pursuant to Multiple Dwelling Law § 286 (2), which provides that prior to building compliance with necessary safety and fire protection standards, residential tenants of interim multiple dwellings who do not have leases or whose leases have expired "shall pay * * * the same rent most recently paid and accepted by the owner", with adjustments to be permitted "in conformity with guidelines to be set by the loft board * * * within six months from the effective date of this article." The Loft Board's decision, which was made retroactive to the date of lease expiration, noted that the increase permitted by the guidelines "is based upon a one time only calculation, and no further increase may be sought pursuant thereto". As of the date of the determination, the lease in question had been expired for nearly two years, and nearly 2½ years had passed since the effective date of the

statute without a final determination by the city on whether the area in which the subject premises were located should be rezoned to permit residential use.

In March 1985, the petitioner commenced this proceeding challenging the Loft Board's rent adjustment determination. The petitioner asserted that the Loft Board had erred in interpreting section 286 (2) as providing for a "one time only" increase, and proffered that the statute instead required the Loft Board to promulgate rent guidelines applicable to "pre-compliance" interim multiple dwellings on an annual basis. Special Term agreed, and issued a judgment requiring the Loft Board to establish yearly guidelines. Because we can find no support for this reading of the statute in either the language or the framework of the Loft Law, we reverse.

The underpinning for the petitioner's suggested construction of the statute is that the Loft Board's interpretation of the law as providing for but a single rent increase for residential spaces in interim multiple dwellings, no matter what the duration of a building's "interim status", impairs property rights and could not have been intended as such by the Legislature. However, even though a "one time only" rent increase may prove more burdensome to owners of buildings whose location in designated study areas increases substantially the time it takes to comply with the statute's safety and fire protection standards, it remains that upon ultimate compliance the owner may seek major rent adjustments from the Loft Board based upon the costs incurred in meeting the prescribed standards (Multiple Dwelling Law § 286 [3], [5]). Nothing precludes the Board from taking into consideration at that time whatever costs may be claimed to be attributable to the length of time taken by the city to rezone the area in which the premises are located (cf. Matter of Association of Commercial Prop. Owners v New York City Loft Bd., 128 Misc 2d 370, 373). Of course, in the event rezoning does not permit residential use, the building becomes exempt from the Loft Law entirely (see, Multiple Dwelling Law § 281 [2]), and thus becomes free of rent regulation. The petitioner's claim of an inequitable burden is further undercut by the fact that owners such as the petitioner not only rented commercial spaces to residential tenants in violation of building code standards, but did so in areas that were not even zoned for residential use (see, Multiple Dwelling Law § 280 ["illegal and unregulated residential conversions undermine the integrity of the local zoning resolution and threaten loss of jobs and industry"]; Spring Realty Co. v New York City Loft Bd., 69 NY2d 657).

The absence of any equitable considerations running in the petitioner's favor renders even more tenuous the strained reading of Multiple Dwelling Law article 7-C required to find a statutory directive that the Loft Board issue annual rent guidelines for precompliance interim multiple dwellings. Multiple Dwelling Law § 286 (2), which is concerned solely with the precompliance period, speaks of "guidelines to be set by the loft board * * * within six months from the effective date of this article" and gives no indication that more than one set of guidelines is to be issued. The statutory scheme rather provides that upon compliance with safety and fire protection standards, the residential loft units become absorbed into the rent stabilization system established under the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4), at which point they become subject to the annual rent guidelines promulgated by the local rent guidelines board in accordance with that statute (Multiple Dwelling Law § 286 [3]-[7]; *see, 165 W. 26th St. Assoc. v Folke,* 131 Misc 2d 867, 870). Indeed the only mention of annual rent guidelines in the Loft Law is the following reference contained in Multiple Dwelling Law § 286 (7), a provision exclusively concerned with the postcompliance period: "The local rent guidelines board shall annually establish guidelines for rent adjustments for the category of buildings covered by this article in accordance with the standards established pursuant to the emergency tenant protection act of nineteen seventy-four * * * The loft board shall annually commission a study by an independent consultant to assist the rent guidelines board in determining the economics of loft housing". Clearly, the "local rent guidelines board" referred to in this subsection is not the Loft Board. Moreover, it is reading too much into the statute to assume, as did Special Term, that simply because the local rent guidelines board must issue its rent guidelines on an annual basis, so must the Loft Board.

In short, the Loft Board's construction of the statute as providing for a "one time only" rent adjustment for residential lofts in precompliance interim multiple dwellings is consistent with the clear wording of the Loft Law and is fully compatible with the statute's framework for the legalization of these dwellings. As "[i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" *(Matter of Howard v Wyman,* 28 NY2d 434, 438), the Loft Board's determination must be confirmed and the

petition dismissed. Thompson, J. P., Weinstein, Eiber and Spatt, JJ., concur.